UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STRUCTURED ASSET SALES, LLC,

                *Plaintiffs*,

        -against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, SONY/ATV MUSIC PUBLISHING LLC,
ATLANTIC RECORDING CORPORATION, d/b/a
ATLANTIC RECORDS, BDI MUSIC LTD., BUCKS
MUSIC GROUP LTD., THE ROYALTY NETWORK,
INC., DAVID PLATZ MUSIC (USA) INC., AMY
WADGE, JAKE GOSLING, MARK "SPIKE" STENT,
STONE DIAMOND MUSIC CORP., CHEWIETOURS
LP, EMI MUSIC PUBLISHING, SONY MUSIC
ENTERTAINMENT INC., SONY CORPORATION
OF AMERICA, SONY CORPORATION, MESSINA
TOURING GROUP, LLC and DOES 1 THROUGH 10

                *Defendants*.

ECF CASE

20-cv-4329 (RA)


**SONY DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**


PRYOR CASHMAN LLP
    Donald S. Zakarin
    dzakarin@pryorcashman.com
    Ilene S. Farkas
    ifarkas@pryorcashman.com
    Andrew M. Goldsmith
    agoldsmith@pryorcashman.com
7 Times Square
New York, New York 10036-6569
Telephone:  (212) 421-4100

*Attorneys for Defendants Sony/ATV Music
Publishing LLC, Stone Diamond Music
Corp. and Sony Corporation of America*

## TABLES OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.    The Complaint Fails To Plausibly Plead Third-Party Beneficiary Rights .......................... 1

II.   SAS's "Authenticity" Objections Are Baseless ................................................................. 2

      A. The Publishing Agreement Is A Self-Authenticating Ancient Document .................... 3

      B. SAS Does Not Actually Raise An "Authenticity"
         Objection Regarding The Publishing Agreement ........................................................ 3

      C. The Other, Distinct "Agreements" Do Not Exist Or Are Otherwise Irrelevant ........... 4

      D. he Relevant Provisions Of The Administration Agreement Are Not Redacted ........... 5

III.  Further Flaws Inherent In SAS's Contract Claims Require Dismissal .............................. 6

      A. SAS Admits Its Second Claim Is Foreclosed
         By Section 7.6 Of The Administration Agreement ..................................................... 6

      B. SAS Otherwise Fails To Allege A Breach Of The Publishing Agreement ................ 6

      C. The Claim For Breach Of The Publishing Agreement Is Time-Barred ...................... 7

IV.   There Has Been No "Breach Of Trust" Of The Publishing Agreement ............................. 9

V.    SCA Is Not A Proper Party; SAS's Continued Claim To The Contrary Is Frivolous ....... 10

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                          <u>PAGE(s)</u>

*Affordable Housing Associates, Inc. v. Town of Brookhaven,*
  13 N.Y.S.3d 876 (Sup. Ct. Suffolk Cty. 2015), *aff'd,* 150 A.D.3d 800 (2d Dep't 2017) .......... 7

*Allied Programs Corp. v. Puritan Insurance Co.,*
  592 F. Supp. 1274 (S.D.N.Y. 1984) ....................................................................................... 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................................. 3

*Bevis v. Terrace View Partners, LP,*
  33 Cal. App. 5th 230 (2019) ................................................................................................... 10

*Brandt v. Lockheed Missiles & Space Co.,*
  154 Cal. App. 3d 1124181 (1984 .......................................................................................... 10

*Carma Dev. (Cal.), Inc. v. Marathon Dev. California, Inc.,*
  2 Cal. 4th 342 (1992) ............................................................................................................. 10

*Celador International Ltd. v. Walt Disney Co.,*
  347 F. Supp.2d 846 (C.D. Cal. 2004) ...................................................................................... 9

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) .................................................................................................... 2

*Cusano v. Klein,*
  280 F. Supp. 2d 1035 (2003) ................................................................................................... 9

*Eloquence Corp. v. Home Consignment Center,*
  49 Cal. App. 5th 655 (2020) .................................................................................................... 7

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,*
  66 N.Y.2d 38 (1985) ................................................................................................................ 3

*Keyes v. Ayco Co., L.P.,*
  No. 117-CV-00955-BKS-DJS, 2018 WL 9989653 ( *N.D. N.*Y. May 14, 2018) ..................... 3

*Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of
  Contemporary Dance, Inc.,*
  380 F.3d 624 (2d Cir. 2004) .................................................................................................... 3

*Martin v. Bridgeport Community Association, Inc.,*
  173 Cal. App. 4th 1024 (2009) ), *aff'd*; 466 F.3d 97 (2d Cir. 2006) ....................................... 3

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(s)**

Nicosia v. Amazo *n*.com, Inc.,
    834 F.3d 220 (2d Cir. 2016), *aff'd*; 815 F. App'x 612 (2d Cir. 2020)................................. 4, 6

*Pebble Cove Homeowners' Association, Inc. v. Fidelity New York  FSB*,
    153 A.D.2d 843 (2d Dep't 1989) ......................................................................................... 10

*Pelaez v. Life Alert, Inc.*,
    09-cv-1668 (CBA) (LB), 2011 WL 1321999 (E.D.N.Y. Mar. 30, 2011)................................6

*United States v. Portrait of Wally*,
    663 F. Supp. 2d 232 (S.D.N.Y. 2009)..................................................................................... 3

*Sessions Payroll Management, Inc. v. Noble Const. Co.*,
    84 Cal. App. 4th 671 (2000) ................................................................................................. 3

*Spickerman v. Carr*,
    04-cv-6226 (CJS), 2006 WL 140714 (W.D.N.Y. Jan. 17, 2006) .............................................4

*UPS Store, Inc. v. Hagan*,
    99 F. Supp. 3d 426 (S.D. *N*.Y. 2015)..................................................................................... 4

*Wolf v. Superior Court*,
    107 Cal. App. 4th 25 (2003) ................................................................................................. 9

**RULES AND REGULATIONS**

Fed. R. Evid. 801(b)(8) ............................................................................................................... 4

**TREATISE**

2 *McCormick On Evid.* § 221 (8th ed.) ......................................................................................3

## PRELIMINARY STATEMENT

SAS is a stranger to the contracts it claims were breached.  Thus, lacking any good faith basis for the claim, SAS alleges that it is a third-party beneficiary of the contracts.  Because the contracts, on their face, refute such claim, ignoring that the contracts have been properly authenticated, SAS invents a baseless authenticity challenge.  SAS then tries to excuse its lack of good faith by attaching numerous emails and letters to the Parness Declaration, claiming it sought copies of the agreements it sued on, which the Sony Defendants supposedly rejected.  This correspondence simply confirms that SAS knew it lacked a good faith basis for its third-party beneficiary claims when it filed its complaint in this action.

Further, the Sony Defendants did not reject SAS's demands.  Instead they proposed an exchange of information.  The Sony Defendants requested SAS's communications with the Copyright Office (rightly anticipating that David Pullman had misrepresented "facts" to the Copyright Office) and SAS's evidence that Townsend authored the "new elements" in the SAS Registration and that a compositional derivative work had been authorized.  SAS, having no such evidence, rejected the Sony Defendants' proposal.

SAS has no claim and no standing to assert any claim.  And, as shown below (and in the Sony Defendants' moving papers), SAS's nonexistent claims are also time-barred.

## ARGUMENT

### I.     The Complaint Fails To Plausibly Plead Third-Party Beneficiary Rights

The agreements which bar SAS's claim to be a third-party beneficiary have been authenticated, making SAS's feigned authenticity objections baseless.  But even before considering the agreements, to survive dismissal, SAS had to plead facts sufficient to support an inference that SAS was an intended third-party beneficiary of the allegedly breached agreements.

But there is not a <u>single</u> plausible factual allegation in the SAS II Complaint supporting such an inference (and SAS identifies none in its opposition). The complaint simply offers the rote conclusions, entitled to no weight at all, that SAS is "a third-party beneficiary of the Administration Agreements," and "a third-party beneficiary of the Songwriting Agreements." (SAS II Complaint ¶¶ 386, 412). *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thus, even if the Administration Agreement and Publishing Agreement did not bar third-party claims – and they do – the second and third claims in the SAS II Complaint still fail because SAS has failed to allege facts showing that it is a third-party beneficiary. *E.g.*, *Sessions Payroll Mgmt., Inc. v. Noble Const. Co.*, 84 Cal. App. 4th 671, 680 (2000); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 43-44 (1985); *see also* Forbes Decl. ¶¶ 9-11.

## II.   SAS's "Authenticity" Objections Are Baseless

SAS's problem is not simply a pleading defect. Its third-party beneficiary claims are also barred by the very agreements it purports to sue on. Indeed, SAS has admitted that if the Court were to consider the Administration Agreement, it "expect[s] that the Court would conclude that [SAS] cannot maintain a claim based" on it since "it has an unredacted provision prohibiting third-party beneficiaries." Opp. Mem. at 19.[1]

SAS knows that the relevant agreements bar its claims. SAS also knows that the Court may consider documents incorporated by reference in the complaint or documents integral to it on this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). SAS's feigned "authenticity" objection fails for multiple reasons.[2]

---

[1] SAS complains about the redactions. But the only provision that pertains to SAS's claimed status as a third-party beneficiary is the provision expressly barring such status. All other provisions are irrelevant to SAS's claim.

[2] Ignoring that UK law on third-party beneficiaries, explained in the Forbes Declaration (which is unrebutted), is different than California law, SAS tries to compare the express language of Section 7.6 of the Administration Agreement with the Publishing Agreement, which it contends "has no such [express] limitation against third-party beneficiaries," and thus it is "at least plausible that SAS … could have claims arising under it." Opp. Mem. at 19-20.

**A.     The Publishing Agreement Is A Self-Authenticating Ancient Document**

The 1973 Publishing Agreement, which is part of Stone Diamond's books and records (Ashby Decl. ¶¶ 1-2), is a self-authenticating ancient document under Fed. R. Evid. 801(b)(8). *E.g.*, *Martha Graham Sch. and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 643 (2d Cir. 2004), *aff'd*; 466 F.3d 97 (2d Cir. 2006) *U.S. v. Portrait of Wally*, 663 F. Supp. 2d 232, 254 (S.D.N.Y. 2009).  The Publishing Agreement is more than 20 years old and was identified by Ms. Ashby as part of Stone Diamond's books and records (*i.e.*, "a place where, if authentic, it likely would be"), and its condition is such that no legitimate suspicion could possibly arise regarding its genuineness.  In fact, not only has SAS failed to identify anything suspicious about the Publishing Agreement, but the SAS Registration, on which this action is based, identifies Stone Diamond as the owner of LGO (whose ownership derives from the Publishing Agreement).

**B.     SAS Does Not Actually Raise An "Authenticity"**
**Objection Regarding The Publishing Agreement**

While SAS purports to challenge the "authenticity" of the Publishing Agreement, its objections are not actually grounded in authenticity.  "[T]he requirement of authentication requires that the proponent, who is offering into evidence a writing … produce evidence sufficient to support a finding that the writing … is what the proponent claims it is." 2 *McCormick On Evid.* § 221 (8th ed.).  SAS does not dispute that the Publishing Agreement is what the Sony Defendants say it is, nor do they claim that it is fraudulent, a forgery or incomplete.[3]  Instead, SAS argues that

---

The issue under California law is whether "the terms of the agreement [] clearly manifest an intent to make [Stone Diamond's] obligation[s] inure to the benefit of [SAS]."  *Martin v. Bridgeport Cmty. Assn., Inc.*, 173 Cal. App. 4th 1024, 1034 (2009) (citations omitted).  The Publishing Agreement manifests the opposite of such an intention.

[3] The case cited by SAS – *Keyes v. Ayco Co., L.P.*, No. 117-CV-00955-BKS-DJS, 2018 WL 9989653, at *4 (N.D.N.Y. May 14, 2018) – is inapposite, as in that case, the plaintiff alleged that the agreement itself was incomplete and missing entire sections.  No such claim is made here with respect to the Publishing Agreement, which is complete.

there may be <u>other</u>, distinct agreements.  The existence of other distinct agreements is irrelevant to the authenticity of the Publishing Agreement.  It is indisputably authentic.[4]

### C.      <u>The Other, Distinct "Agreements" Do Not Exist Or Are Otherwise Irrelevant</u>

SAS speculates about the theoretical existence of other agreements that might support its third claim and its alleged status as a third-party beneficiary.  SAS's speculation about other agreements, about which it knows nothing, confirms that SAS never had a good faith basis for its claims and now hopes to find one.  SAS has thus admitted its violation of Rule 11.

Moreover, while not even relevant to SAS's fabricated third-party beneficiary claim, SAS implies that the Sony Defendants have withheld the Townsend songwriter agreement. Misrepresenting correspondence (Parness Decl. at Exhibit T), SAS falsely claims that the Sony Defendants professed their willingness to provide a songwriter agreement (in return for information that SAS refused to provide).  In fact, the Sony Defendants specifically stated that the Sony Defendants were willing to consider providing "<u>the agreement between Stone Diamond and Cherritown.</u>"  (Parness Decl. Ex. T).  That is the 1973 Publishing Agreement, *i.e.*, the agreement Ms. Ashby authenticated.  The Sony Defendants never said it was a songwriter agreement.  In that agreement, signed by Townsend on behalf of Cherritown, Townsend represented that Cherritown had the rights in LGO.  Any songwriter agreement would thus be between Cherritown (which was

---

[4] To the extent SAS persists in offering the naked conclusion that the Publishing Agreement is not "authentic," that plainly does not suffice to overcome dismissal.  *E.g.*, *Spickerman v. Carr*, 04-cv-6226 (CJS), 2006 WL 140714 (W.D.N.Y. Jan. 17, 2006) ("plaintiff's allegations against defendants' exhibits are too general and too lacking in support in the record to raise any question as to their authenticity").  The other cases cited by SAS, to the extent they discussed the specific authenticity objection being made, also make clear that the plaintiff actually articulated an authenticity objection.  *E.g.*, *UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 434 (S.D.N.Y. 2015) (forgery alleged); *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 234-35 (2d Cir. 2016) , *aff'd*; 815 F. App'x 612 (2d Cir. 2020) (plaintiff claimed document in issue – a "Registration Page" that the defendants claimed he saw – was not the actual document that he previously saw).

Townsend's own company) and Townsend.[5]  Stone Diamond has relied on the Cherritown representation, which has proved good for nearly 50 years.  It has no copy of a songwriter agreement.  (Ashby Decl. ¶ 2).

SAS also complains that the Publishing Agreement "only effected a partial transfer of the copyright from Cherritown to Stone Diamond," and that "[a]t some later point, the remaining 50% ownership interest was transferred over to Stone Diamond."  The SAS II Complaint concedes that Stone Diamond "purchased the other half of the copyright and publishing rights of original co-owner Cherritown Music Co. Inc."  (SAS II Complaint ¶ 34).  SAS does not plead that this subsequent "purchase agreement" provided any basis for making SAS a third-party beneficiary.  It is undisputed that, in 1988, Cherritown assigned to Jobete Music Co., Inc. ("Jobete"), an affiliate of Stone Diamond, its remaining 50% ownership interest in LGO and its rights under the 1973 Publishing Agreement (the "1988 Agreement").  (Reply Ashby Decl. Ex. 1).[6]

The 1988 agreement (which, like the Publishing Agreement, is self-authenticating and which, like the Publishing Agreement, is governed by California law – both Jobete and Cherritown were based in California) does not remotely bear on or support SAS's third-party beneficiary theory.

### D.  The Relevant Provisions Of The Administration Agreement Are Not Redacted

SAS complains that SATV "heavily redacted" the highly confidential Administration Agreement, and that the redacted portions are "critical" because they specify "what administrative rights and duties SATV received and took on."  Opp. Mem. at 17.

---

[5] Since SAS professes to have obtained its rights from a Townsend heir (and to have filed the SAS Registration pursuant to the illusory authorization from the other Townsend heirs), if such a songwriter agreement exists (as Cherritown/Townsend represented), perhaps SAS can obtain it from the Townsend heirs.

[6] The existence of this agreement was publicly disclosed more than two years ago in *Griffin*.  (*Griffin* Dkt. No. 69).

The problem with SAS's third-party beneficiary claim is not what is redacted but what is not redacted. And what is not redacted is the provision that expressly bars any third-party beneficiary claim. SATV's administrative rights and duties, owed to DH, are irrelevant to SAS, which is neither a party to nor a third-party beneficiary of the agreement. SAS has admitted that, were the Court to consider the Administration Agreement, its claim of third-party beneficiary is entirely foreclosed by the plain and unambiguous language of Section 7.6. *Id.* at 19. As set forth in the unrebutted Forbes Declaration, as a matter of undisputed UK law, SAS's claim is barred.

SAS's feigned authenticity argument is not even supported by the one case it cites. The quoted portion of the case did not address authenticity. The redaction was made to an "Order Page" from Amazon's website and the Court inferred that the redaction corresponded to the product being purchased. *See Nicosia*, 834 F.3d at 236. But the authenticity objections related to a different document (the "Registration Page," not the "Order Page") and had nothing to do with redactions. *Id.* at 234-235. *C.f. Pelaez v. Life Alert, Inc.*, 09-cv-1668 (CBA) (LB), 2011 WL 1321999, at *2 n.2 (E.D.N.Y. Mar. 30, 2011) (considering records notwithstanding authenticity objection due to redactions).

## III.    Further Flaws Inherent In SAS's Contract Claims Require Dismissal

### A.    SAS Admits Its Second Claim Is Foreclosed By Section 7.6 Of The Administration Agreement

It is undisputed by SAS that the Administration Agreement expressly bars third-party beneficiary claims. SAS offers nothing to contradict the Forbes Declaration regarding UK law requiring dismissal of its third-party beneficiary claim.

### B.    SAS Otherwise Fails To Allege A Breach Of The Publishing Agreement

In Section III.C. of its moving memorandum, the Sony Defendants demonstrated that SAS's third claim also fails because the Publishing Agreement does not require Stone Diamond to

perform the obligations that SAS alleges it supposedly breached.  Beyond its baseless and pretextual "authenticity" objection, SAS wholly ignores, and thus fails to rebut, the fact that no contractual obligations have been breached, even were SAS a third-party beneficiary.

### C.     The Claim For Breach Of The Publishing Agreement Is Time-Barred

Beyond the foregoing flaws, as shown in Defendants' moving papers, California's four-year statute of limitations bars SAS's nonexistent claim of breach.  SAS manufactures several arguments in effort to avoid the statutory bar.

*First*, SAS cites the "continuing wrong doctrine" under New York law, claiming that Stone Diamond "had a continuing duty to act in good faith."  Not only is the Publishing Agreement governed by California law but the case relied on by SAS conclusively refutes its argument.  *See Affordable Hous. Assocs., Inc. v. Town of Brookhaven*, 13 N.Y.S.3d 876 (Sup. Ct. Suffolk Cty. 2015), *aff'd*, 150 A.D.3d 800 (2d Dep't 2017).  Having quoted the lower court opinion, SAS ignores that the Second Department ruled that "the Supreme Court erred in applying the continuing wrong doctrine" because "there was no breach of a recurring duty." *Id.* at 802-03 (emphasis added). Thus, even if New York law applied – and it does not – Stone Diamond had no "recurring duty" to register copyrights or sue for infringement.  In contrast, California law, ignored by SAS, only permits tolling for "continuous" breaches where, unlike here, "performance of contractual obligations is divisible into intervals." *Eloquence Corp. v. Home Consignment Ctr.*, 49 Cal. App. 5th 655, 661 (2020) (citation omitted).

*Second*, SAS makes a self-defeating claim that Stone Diamond cannot rely on the statute of limitations and also argue that SAS lacks third-party beneficiary rights under the Publishing Agreement.  SAS seems to be arguing that if SAS has no third-party beneficiary status, its nonexistent claim cannot be time-barred.  Stone Diamond's point was simple: if SAS could satisfy

third-party beneficiary requirements (which it cannot), its third claim in the SAS II Complaint would be time-barred.  Either way, SAS has no claim.

*Third*, in regard to its claim that Stone Diamond breached the Publishing Agreement by failing to register the LGO Recording for copyright to evidence additional compositional matter, SAS ignores that if such an obligation existed, it accrued more than 40 years ago in 1978 upon the effective date of the 1976 Copyright Act.  Its contention that Stone Diamond had "the ability" to register it thereafter does not alter the fact that the alleged breach occurred in 1978.  There was no "continuing" obligation to register, and the claim is long since time-barred.

SAS's attempt to resurrect a time-barred claim by asserting that the recent rulings in *Skidmore* and *Griffin* "placed the Sony Defendants on notice to file new copyright applications and therefore restarted the running of the statute of limitations" (Opp. Mem. at 22, capitalization altered) exists in thin air.  *Skidmore* and *Griffin* did not announce a change in the law.  They merely stated what the law had always been under the 1909 Act and that, under the 1976 Act, since 1978, recordings could be registered to evidence the underlying composition.  Townsend and Cherritown could have but did not register the Gaye recording.  If SAS had a claim that was not time-barred, it would appear to be against itself as successor in interest to Townsend.[7]

*Fourth*, SAS attempts to dodge the contract statute of limitations by pointing to the fact that an infringement claim is not time-barred as to damages accruing from acts of infringement within three years of the commencement of an infringement action.  SAS cannot import the copyright statute of limitations and make it applicable to its deficient contract claims.  SAS's claims for breach of the Publishing Agreement (assuming it had one, which it does not) accrued in 1978 (when the LGO Recording could be registered) and in 2014 (upon TOL's commercial

---

[7] Nor could *Skidmore* or *Griffin* change existing law, as only Congress can change the registration requirements under the Copyright Act.

release).  For the same reason, the statute of limitations for copyright infringement actions in the UK (even assuming that SAS were suing the owner of the UK rights in LGO, which it is not) is equally irrelevant.  SAS's nonexistent breach of contract claim is time-barred.

## IV.   There Has Been No "Breach Of Trust" Of The Publishing Agreement

Bereft of any analysis and ignoring that New York law is inapplicable, SAS cuts and pastes block-quotes from several New York cases to argue that Stone Diamond and SATV "breached their duty of trust."  Opp. Mem. at 23 (capitalization altered).  But because SAS admits that the alleged "duty of trust" only exists by virtue of the contracts, and because SAS is not a party to or third-party beneficiary of any of the contracts on which it relies for this alleged breach of trust (or good faith and fair dealing), SAS's "breach of trust" claim also fails as a matter of law.

Beyond the fact that New York law is inapplicable, the Publishing Agreement is governed by California law and under California law, there is no fiduciary duty or trust relationship between an author (and SAS is not even that) and a music publisher.  Rather, the relationship is purely contractual (and as discussed above, SAS has no contract claim).  *See Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29-36 (2003); *see also Cusano v. Klein*, 280 F. Supp. 2d 1035, 1041 (2003); *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp.2d 846, 854 (C.D. Cal. 2004).  Moreover, SATV, as opposed to Stone Diamond, never had any author-publisher relationship with Townsend, making SAS's reference to the New York cases even more inapposite.

Even construing SAS's claim as one for alleged breach of the duty of good faith and fair dealing, the claim still fails because the claims are time-barred and SAS is not only a stranger to the relevant agreements but is also not a third-party beneficiary.  The claim also fails for the reasons articulated in the Sony Defendants' moving papers, reasons that SAS has not even attempted to rebut – *i.e.*, where, as here, a contract governed by California law expressly confers a party with

the right to take certain action or to refrain from taking certain action and that party decides to refrain from taking that action, "such conduct can <u>never</u> violate an implied covenant of good faith and fair dealing." *Carma Dev. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 376 (1992) (emphasis added); *see also Bevis v. Terrace View Partners, LP*, 33 Cal. App. 5th 230, 256 (2019); *Brandt v. Lockheed Missiles & Space Co.*, 154 Cal. App. 3d 1124, 1130 (1984).

Finally, Stone Diamond has no interest in TOL. It has not "used" TOL to "compete" with or against LGO, nor has it "preferred" TOL to LGO.

**V.    SCA Is Not A Proper Party; SAS's Continued Claim To The Contrary Is Frivolous**

SAS concedes that only a promisor may be held liable for breach of contract. Corporate parents and affiliates cannot be held liable for alleged breaches of contract committed by their corporate subsidiaries or affiliates unless a plaintiff is successful in piercing the corporate veil. *E.g.*, *Allied Programs Corp. v. Puritan Ins. Co.*, 592 F. Supp. 1274, 1276-77 (S.D.N.Y. 1984); *Pebble Cove Homeowners' Ass'n, Inc. v. Fid. N.Y. FSB*, 153 A.D.2d 843, 843 (2d Dep't 1989). There is no allegation to pierce the corporate veil or to show that SCA is an alter-ego of Stone Diamond or SATV. SAS's claims against SCA, if possible, are even more frivolous than its nonexistent contract claims against Stone Diamond and SATV.

Similarly, SAS has no basis for its infringement claim against SCA, which has no interest in TOL and is not alleged to have engaged in a single act of infringement. The infringement claim against SCA is frivolous and in clear violation of Rule 11.

<u>CONCLUSION</u>

It is respectfully submitted that the motion should be granted, and that this action should be dismissed as against the Sony Defendants.

10

Dated:  New York, New York
          October 23, 2020

PRYOR CASHMAN LLP

By: */s/ Donald S. Zakarin*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Sony/ATV Music Publishing LLC, Stone Diamond Music Corp. and Sony Corporation of America*