USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/30/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STRUCTURED ASSET SALES, LLC,

                      Plaintiff,

        v.

EDWARD CHRISTOPHER SHEERAN
p/k/a/ ED SHEERAN, SONY/ATV MUSIC
PUBLISHING, LLC, ATLANTIC
RECORDING CORPORATION d/b/a
ATLANTIC RECORDS, BDI MUSIC LTD.,
BUCKS MUSIC GROUP LTD., THE
ROYALTY NETWORK, INC., DAVID
PLATZ MUSIC (USA) INC., AMY
WADGE, JAKE GOSLING, MARK
"SPIKE" STENT, STONE DIAMOND
MUSIC CORP., CHEWIETOURS LP, EMI
MUSIC PUBLISHING, SONY MUSIC
ENTERTAINMENT INC., SONY
CORPORATION OF AMERICA, SONY
CORPORATION, MESSINA TOURING
GROUP, LLC, and DOES 1 THROUGH 10,

                      Defendants.

---

No.  20-CV-4329 (RA)


OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

      Plaintiff Structured Asset Sales, LLC, as a beneficial owner of the copyright to the 1973

hit song "Let's Get It On," brings this action against Defendants Edward Christopher Sheeran,

Atlantic Recording Corporation, BDi Music Ltd., Bucks Music Group Ltd, The Royalty Network,

Inc., David Platz Music (USA) Inc., Amy Wadge, Jake Gosling, Mark "Spike" Stent, Chewietours

LP, and Messina Touring Group, LLC (collectively, the "Sheeran Defendants"), principally

alleging that the release and commercial exploitation of a substantially similar song, 2014's

"Thinking Out Loud," violates its rights under federal copyright law.  Plaintiff also alleges that the

failure of Defendants Sony Corporation of America, Sony/ATV Music Publishing, EMI Music Publication, and Stone Diamond Music Corporation (collectively, the "Sony Defendants") to adequately protect its copyright constitutes a breach of administration and songwriting agreements to which it claims to be a third-party beneficiary.  Now before the Court are Defendants' motions to dismiss the complaint.

Defendants move to dismiss the copyright infringement claim as duplicative of a suit that is currently pending in this District before Judge Louis L. Stanton.  Plaintiff filed that suit in 2018, alleging that "Thinking Out Loud" infringes the 1973 copyright in "Let's Get It On" that is based only on that song's sheet music.  In April 2020, after the Sony Defendants allegedly rebuffed multiple requests to expand the scope of that copyright, Plaintiff obtained a new copyright registration in "Let's Get It On," this time based on a studio recording of the hit song that supposedly contains musical elements not found in the sheet music.  Plaintiff then filed this suit claiming that "Thinking Out Loud" infringes the 2020 copyright.  Defendants insist that Plaintiff— who purchased its ownership stake in "Let's Get It On" from an heir of co-author Ed Townsend, Jr.—was not authorized to obtain that registration and that the lack of authorization defeats any claim of copyright ownership.  The Court concludes that the 2020 registration sufficiently alleges Plaintiff's beneficial ownership in that copyright for purposes of this motion, and that the registration's incorporation of new musical elements precludes a finding that Plaintiff's two suits are duplicative.  Nonetheless, in light of the significant overlap between the two actions, the Court stays the instant suit pending resolution of the action before Judge Stanton.

Additionally, the Sony Defendants move for dismissal of Plaintiff's remaining claims that the failure to enhance the copyright protection in "Let's Get It On" breached "Administration Agreements" and "Songwriting Agreements" that Plaintiff admits it has never seen but to which it

claims to be a third-party beneficiary.  In support of their motion, the Sony Defendants provide what they claim to be the true versions of these agreements, both of which disclaim the existence of third-party beneficiaries.  Without even relying on those documents, the Court concludes that Plaintiff has failed to adequately plead that it was the beneficiary of any contract that may have been breached by Defendants' alleged actions with respect to the copyright.  The motion to dismiss those claims is therefore granted.

## BACKGROUND

### I.      Factual Background

The facts alleged in the complaint (the "Complaint") are assumed to be true for the purposes of this motion.  *See, e.g., Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). The Court also considers facts drawn from the relevant copyright registrations and agreements that are integral to the Complaint or were relied upon by Plaintiff in drafting it.  *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  Lastly, the Court takes judicial notice of related litigation in other courts.  *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)).

### A.      The Principal Parties

Plaintiff Structured Asset Sales, LLC ("SAS") is a California Limited Liability Company that "invests in and owns rights to thousands of songs and musical compositions."  Compl. ¶ 6. SAS is the "beneficial owner of one-third of all of the copyright rights" of the late songwriter Ed Townsend Jr., including "Let's Get It On."  *See id*.  SAS purchased those rights from Townsend's son Clef Michael Townsend, who inherited a one-third share of his father's estate upon his 2003

death.  *Id.* ¶ 23.  That purchase was subsequently "approved by the probate court in California." *Id.*

Defendant Edward Sheeran, a well-known musician, songwriter, and producer living in the United Kingdom, co-wrote and recorded "Thinking Out Loud."  *Id.* ¶¶ 24, 27, 31.  Defendant Sony/ATV Music Publishing, LLC, a Delaware limited liability corporation with its principal place of business in New York, New York, is both the music publisher for "Thinking Out Loud" and administers "Let's Get It On" on a worldwide basis.  *Id.* ¶ 25.  Defendant Stone Diamond Music Corp. ("Stone Diamond") is "the copyright owner of the 'Let's Get It On' musical composition," and "one of two original owners of the composition listed on the 1973 registrations." *Id.* ¶ 34.  Stone Diamond is now "part of the Sony Corporation family of companies."  *Id.* ¶ 5.

**B.      1973 Copyright Registration of "Let's Get It On."**

The "Let's Get It On" musical composition was written and produced by Townsend and Marvin Gaye in 1973.  *Id.*  ¶¶ 8, 23.  In 1973, the composition was twice registered with the United States Copyright Office (the "Copyright Office").  *Id.* ¶ 42.  In each instance, the sheet music of the composition was used as the "deposit copy," *i.e.*, the version of the work deposited with the Copyright Office, *see* 17 U.S.C. § 407.  "A recording of the song was later made by Gaye, in 1973." Compl. ¶ 45.  According to the 1973 registration, the first date of publication of "Let's Get It On" was February 14, 1973.  *See* Dkt. 91, Declaration of Hillel I. Parness in Opposition to the Sheeran Defendants' Motion to Dismiss Count I of the Complaint ("Parness Decl."), Ex. 4 at 2-3. That registration lists Stone Diamond and Cherritown Music Co., Inc. ("Cherritown") as copyright claimants and Ed Townsend as the sole author.  *Id.*  The 1973 copyrights were automatically renewed in 2000.  Compl. ¶ 42.  "Let's Get It On" has since become "a world-famous composition and recording."  *Id.* ¶ 320.

### C.    Ownership of the Rights to "Let's Get It On"

Plaintiff alleges upon information and belief that "Stone Diamond purchased the other half of the copyright and publishing rights of original co-owner Cherritown," making Stone Diamond the 100% copyright owner and publisher of the composition.  *Id.* ¶ 34.  In support of their motion to dismiss, Defendants have submitted an agreement indicating that Cherritown sold the entirety of its interest in "Let's Get It On" to Stone Diamond subsidiary Jobete Music Co. in 1988.  *See* Dkt. 95, Reply Declaration of Audrey Ashby, Ex. 1 ("1988 Agreement").  Townsend apparently signed that agreement on behalf of Cherritown.  *Id.*  As of today, "Stone Diamond is the legal owner of the 'Let's Get It On' composition, while SAS is one of its beneficial owners."  Compl. ¶ 334.

According to Plaintiff, "Sony/ATV is the worldwide administrator of the 'Let's Get It On' musical composition."  *Id.* ¶ 380.   Plaintiff alleges, upon information and belief, that "the scope of Sony/ATV obligations to the owners of the 'Let's Get It On' composition are detailed in one or more contracts between Sony/ATV (or its corporate predecessors or successors/assigns) and the owners of the composition," *id.* ¶ 342, and that "Sony/ATV was and is obligated under the aforementioned contracts to make filings with the United States Copyright Office to protect, maintain the protection, and enhance the protection afforded to the 'Let's Get It On' composition under the Copyright Act," *id*. ¶ 345.  Although Plaintiff made multiple requests to Sony/ATV and Stone Diamond in April and May 2020 "for a copy of the Administration Agreements," it allegedly has not received a "single piece of paper."  *Id.* ¶ 384.

Plaintiff further alleges, upon information and belief, that "Stone Diamond's legal ownership of 'Let's Get It On' is governed by one or more Songwriting Agreements between Edward Townsend and/or Marvin Gaye, or the successors/assigns of one or both of those persons,

on the one hand, and Stone Diamond, on the other hand, or the corporate predecessors or successors/assigns of that company." *Id.* ¶ 409.  In spite of Plaintiff's multiple requests in April and May of 2020 for a copy of these contracts, Defendants purportedly did not provide a "single piece of paper" to Plaintiff.  *Id.* ¶ 410.

### D.    The Release of "Thinking Out Loud"

Defendant Sheeran released "Thinking Out Loud" in 2014.  *Id.* ¶ 47.  In recognition of that song, he was nominated for multiple Grammy Awards.  *Id.* ¶ 24.  "Not long after its release, many people," including a 2015 article in *Spin Magazine,* "began commenting on the similarities between 'Thinking Out Loud' and 'Let's Get It On.'"  *Id.* ¶ 50.  Plaintiff alleges, upon information and belief, that "Sheeran himself regularly performs both songs together in a 'mash-up' format, moving from one song to the other and back again."  *Id.* ¶ 321.

### E.    Parallel Legal Proceedings and 2020 Registration of "Let's Get It On."

On July 11, 2017, Kathryn Townsend Griffin, Helen McDonald, and the Estate of Cherri Gale Townsend—the other successors in interest to Townsend's estate—filed a complaint for copyright infringement in the United States District Court for the Southern District of New York against Sheeran, Atlantic Records, Sony/ATV and Warner Music Group Corporation, alleging that "Thinking Out Loud" infringed the copyright in the musical composition "Let's Get It On." Compl. ¶ 332; *see Griffin et al. v. Sheeran et al.,* No. 17-cv-5221-LLS ("*Griffin*").  On May 10, 2018, Plaintiff sought to intervene in the case pursuant to Federal Rules of Civil Procedure 24(a) and 24(b).  *See Griffin*, Dkt. 43.  That motion was denied for untimeliness on June 11, 2018.  *See id.*, Dkt. 48.  *Griffin* is currently set for trial, with Judge Stanton presiding.  *See id.*, Dkt. 148.

On June 28, 2018, Plaintiff brought its own suit against Defendants in the Southern District, alleging that "'Thinking Out Loud' copied and exploited, without authorization or credit, the 'Let's

Get It On' composition," as registered in the 1973 copyright. *See Structured Asset Sales, LLC v. Sheeran et al.,* No. 18-cv-5839-LLS ("*SAS I*").  Judge Stanton accepted the case as related to *Griffin.*  Plaintiff amended its complaint on July 16, 2018, October 8, 2018, and May 30, 2019. *SAS I,* Dkt. 48, 73, 102.

On March 9, 2020, the Court of Appeals for the Ninth Circuit, sitting *en banc*, issued *Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1041 (9th Cir. 2020). *Skidmore* held that the scope of a copyright in an unpublished work under the 1909 Copyright Act "is defined by the deposit copy."  *Id.* at 1056.  In response to that decision and presumably concerned about its effect on the scope of the 1973 copyright for "Let's Get It On," Plaintiff wrote to Sony/ATV and Stone Diamond requesting that they "take action to enhance the scope of copyright protection" for the song.  Compl. ¶ 385.  On March 19, 2020, and again on April 7, 2020, Plaintiff "specifically requested that Sony/ATV and/or Stone Diamond file a copyright registration . . . using a sound recording of the composition as deposit copy," but "[c]ounsel for Sony/ATV and Stone Diamond refused to do so."  *Id.* ¶ 399.  On March 24, 2020, Judge Stanton ruled in *Griffin* that the 1973 copyright to "Let's Get It On" is limited to what was specifically expressed in the deposit copy, *i.e.*, the sheet music.  *Id.* ¶ 8 n.4.

On April 14, 2020, Plaintiff filed an expedited application with the Copyright Office— allegedly on behalf of, and with the permission of, the *Griffin* plaintiffs—to register the composition using "the 1973 original hit #1 Billboard single sound recording of the composition, performed by Gaye, . . . as the deposit copy."  Compl. ¶ 43; *see* Parness Decl., Ex. 2.  The 2020 copyright, which lists Stone Diamond and Cherritown as the copyright claimants, "[e]xcludes lyrics and music reflected on deposit copy for 1973 registrations," but includes "lyrics and music not reflected on deposit copy for 1973 registrations."  Parness Decl., Ex. 2 at 3-4.  In

correspondence concerning its application, Plaintiff's Chief Executive Officer stated to the Copyright Office that "[a]ny music and lyrics in the studio recording that are not in the original deposit copy were created by Ed Townsend and Marvin Gaye." *See* Dkt. 63, Declaration of Donald S. Zakarin in Support of Motion to Dismiss Copyright Infringement Claim, Ex. 4 at 12. Accordingly, the registration lists Townsend and Gaye as the authors.  Parness Decl., Ex. 2 at 3-4. The accompanying certificate indicates that the first date of the publication of "Let's Get It On" was January 1, 1978.  *Id.*  That registration was approved on April 24, 2020, bearing the number PA0002238083.  *Id.*

Plaintiff thereafter sought leave in *SAS I* to file a fourth amended complaint that would include claims arising from the 2020 registration.  *See SAS I,* Dkt. 156.  Defendants opposed that request on the grounds that the purported registration was invalid, and that such an amendment would not relate back as one cannot sue on an unregistered copyright.  *See id.*, Dkt. 161.  In a memorandum to counsel, Judge Stanton noted that the proposed amendment "raises serious concerns of trial administration and jury confusion" given the differing scopes of the 1973 and 2020 copyrights, and the differing musical components in each.  *Id.*, Dkt. 164.  Stating that it would be "better to deny permission to file the Fourth Amended Complaint," Judge Stanton nonetheless permitted Plaintiff "to file a formal motion for leave to file it, so the matter may be presented more fully."  *Id.*

In lieu of filing a formal motion in *SAS I,* Plaintiff initiated this action on June 8, 2020. Although the case was referred to Judge Stanton as possibly related to *SAS I*, Judge Stanton declined to accept the case as related, and it was assigned to this Court.  The Sheeran Defendants filed a motion to dismiss the copyright infringement claim on August 28, 2020.  Dkt. 62 ("Sheeran

Mot.").  The Sony Defendants moved to dismiss the claims for breach of contract on the same day.
Dkt. 65 ("Sony Mot.").

## II.    Allegations in the Complaint

With respect to the principal claim of copyright infringement, Plaintiff contends that
"'Thinking Out Loud' copies various elements of 'Let's Get It On,' including but not limited to
the melody, rhythms, harmonies, drums, bass line, backing chorus, tempo, syncopation and
looping."  Compl. ¶ 9.  The bulk of the Complaint draws from three expert reports and details the
alleged similarities in musical elements, such as chord progression and bass line, between the two
compositions.  Compl. ¶¶ 54-333.  According to Plaintiff, "Defendants' reproduction, distribution,
and public performances of  . . . 'Thinking Out Loud'" without proper compensation of the
copyright owners for the use of the copyrighted elements in "Let's Get It On" willfully infringes
its copyrights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.  Id.* ¶¶ 365-377.

In its second cause of action, Plaintiff contends that the Sony Defendants breached the
"Administration Agreements" of which it declares itself a "a third-party beneficiary," *id.* ¶ 386.
Without reference to any specific document, Plaintiff alleges that "the Administration Agreements
impose a duty of good faith and fair dealing between and among the parties to that contract and its
beneficiaries, including SAS." *Id.* ¶ 390.  Plaintiff claims that the Sony Defendants "breached the
Administration Agreements by failing to take steps to secure one or more additional copyright
registrations, using sound recordings as deposit copies, to enhance the scope of copyright
protection for the 'Let's Get It On' musical composition in the United States and throughout the
world." *Id.* ¶¶ 397, 425.

In its third cause of action, Plaintiff contends that the Sony Defendants breached the
"Songwriting Agreements" by intentionally permitting the copyright to be infringed by others. *Id.*

¶¶ 405-419.   Plaintiff again declares itself "a third-party beneficiary of the Songwriting Agreements," without referencing any specific contract.  *Id.* ¶ 412.  According to Plaintiff, the Songwriting Agreements "impose a duty of good faith and fair dealing between and among the parties to that contract and its beneficiaries, including SAS." *Id.* ¶ 417.  Citing a number of federal and state cases on New York contract law, Plaintiff contends that the Songwriting Agreements obligated the Sony Defendants "to exercise good faith toward SAS," "to endeavor to make 'Let's Get It On' productive," and "not to use 'Let's Get It On' in a way that would deprive SAS of its right to royalties." *Id.* ¶¶ 416-420.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(b)(6), the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (internal quotation marks omitted).  In answering this question, the Court must "'accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations.'"  *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (other internal quotation marks omitted)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor does a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

10

The Court may consider any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any "integral" document on which the plaintiff relied in drafting the complaint.  *See Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230-31 (2d Cir. 2016).   Generally, a document is considered integral to the complaint when it constitutes a "'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.'"  *Id.* at 231 (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).   "However, before materials outside the record may become the basis for a dismissal . . . it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document."  *Faulkner*, 463 F.3d at 134.

## DISCUSSION

### I.     Claim I: Copyright Infringement

Defendants' primary argument is that the action for copyright infringement should be dismissed—or alternatively stayed—as duplicative of *SAS I.*   They additionally contend that Plaintiff fails to state a claim for copyright infringement because that claim relies on a 2020 registration that Plaintiff does not plausibly allege to be valid.  Because the extent of the overlap between *SAS I* and the copyright claim before this Court depends on the validity of the 2020 copyright—the only substantive difference between the two infringement claims—the Court must first determine whether Plaintiff has adequately pled ownership of the 2020 copyright.

A. **Whether Plaintiff Has Plausibly Alleged the Validity of the 2020 Registration**

Defendants contend that the 2020 registration is invalid because (1) Plaintiff applied for the registration without authorization and misrepresented Townsend's authorship in its application to the Copyright Office, and (2) Plaintiff has not alleged sufficient facts to demonstrate its beneficial interest in that copyright. Plaintiff, defending the propriety of the 2020 registration, insists that the Court cannot credit Defendants' objections, or determine the invalidity of the 2020 registration, without engaging in fact-finding that would be inappropriate on a motion to dismiss. The Court agrees that it cannot make such a determination on the record before it.

"To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Abdin v. CBS Broadcasting Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361(1991)). In this case, Plaintiff's claim of beneficial ownership of the 2020 copyright hinges on the validity of the registration because a certificate of copyright registration is a prerequisite to bringing a civil copyright infringement action, 17 U.S.C. § 411(a); *see Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 1:15-CV-7404-GHW, 2017 WL 3973957, at *9 (S.D.N.Y. Sept. 7, 2017).

According to the Copyright Act, "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright" in any judicial proceeding. 17 U.S.C. § 410(c). "The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." *Id.* In this case, the certificate indicates on its face that registration was effected more than forty-two years after the putative publication of "Let's Get It On." *See* Parness Decl., Ex. 2. The registration is therefore not entitled to a statutory presumption of validity.

Defendants contend that Plaintiff, by virtue of its status as a beneficial rather than legal owner of the copyright, was not authorized to register a new version of "Let's Get It On."  Sheeran Mot. at 12-13.  The facts underlying that contention are undisputed.  While Plaintiff enjoys beneficial ownership of the copyright, Stone Diamond has exclusive rights to the legal title.  *See* Compl. ¶¶ 6, 34, 334.  Defendants' position appears to find support in the text of the Copyright Act as well as its implementing regulations.  *See* 17 U.S.C. § 408 ("[T]he owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section. . .");  37 C.F.R. § 202.3(c)(1) ("As a general rule, an application for copyright registration may be submitted by any author or other copyright claimant of a work, the owner of any exclusive right in a work, or the duly authorized agent of any such author, other claimant, or owner.").  Plaintiff does not allege that it acted as the duly authorized agent of the copyright claimant, Stone Diamond, nor that it qualifies as an "author" under the statute.  Also absent from the Complaint, as noted by Defendants, are allegations that Townsend actually authored the new elements in the version registered by Plaintiff, or that such elements had not fallen into the public domain.  *See* 17 U.S.C. § 303(a) (providing for copyrights in works that are "not theretofore in the public domain").

Despite these potential infirmities in the registration, the Court concludes that the registration carries sufficient evidentiary weight to adequately plead copyright ownership at this stage of the proceedings.  *See* 17 U.S.C. § 410(c).  Defendants point to no case in which a court invalidated a copyright registration on a motion to dismiss.  The Court declines to disregard a facially valid registration prior to the development of any factual record, namely discovery as to the extent of Townsend's role in authoring the new musical elements embodied in the 2020 registration.  This approach accords with the procedure outlined in the Copyright Act.  Pursuant to

13

that statute, a certificate of registration that contains inaccurate information is insufficient to bring a copyright infringement suit when the registrant knowingly included the inaccurate information, and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1).  Before concluding that this test is met, and that a certificate of registration cannot support an infringement action, however, the Court is required to consult the Register of Copyrights.  *See id.* § 411(b)(2) ("In any case in which inaccurate information [in the certificate of registration] is alleged, the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." (emphasis added)); *see also Palmer/Kane LLC*, 2017 WL 3973957, at *10 (describing this provision as mandatory in nature).  In light of the dispute over Townsend's authorship over the new musical elements, it would be premature to conclude, at this stage of the litigation, that the 2020 registration is an invalid basis on which to bring suit.

In sum, the copyright registration in this case allows the court to reasonably infer that Plaintiff has ownership of the 2020 copyright, which in turn authorizes it to bring an infringement action on that copyright.  Although Defendant may ultimately be able to demonstrate that Plaintiff was neither authorized nor entitled to obtain that registration on behalf of Townsend, denial of the motion is nonetheless appropriate at this time.

### B.    Whether the Court Should Dismiss or Stay the Action as Duplicative

The Court must next determine whether this action is impermissibly duplicative of the pending litigation in *SAS I*.  Plaintiff disputes this contention, arguing that it filed this action only because the *SAS I* court directed it to file two separate claims in lieu of consolidation.  As *SAS I* concerns only the 1973 copyright registration, a registration that differs in scope from the 2020

copyright that underlies this action, the Court declines to dismiss this suit as duplicative.  Because it cannot yet determine the extent to which *SAS I* will have preclusive effect on this action, however, the Court finds that a stay is warranted.

A district court, "[a]s part of its general power to administer its docket, . . . may stay or dismiss a suit that is duplicative of another federal court suit."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)).  "Because of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions."  *Id.* (citing cases).  In determining the appropriate procedure, the Court should consider the need to "protect parties from the 'vexation of concurrent litigation over the same subject matter.'" *Id.* (citing *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)).  The decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion. *Adam*, 950 F.2d at 92.

It is undisputed that there are numerous similarities between this action and *SAS I.*  The parties are identical.  Both suits allege that "Thinking Out Loud" infringes Plaintiff's beneficial ownership interest in "Let's Get It On" and seek over $100 million in damages for that infringement.  Yet the two actions differ in one material respect, the scope of the allegedly infringed copyright.  Here, the Complaint alleges that the 2020 copyright registration enhanced the scope of the copyright protection in "Let's Get It On" by incorporating musical elements not present in the sheet music deposited with the Copyright Office in 1973.  Accordingly, the "detailed musical-analytical study" upon which the Complaint relies compares "Thinking Out Loud" to a studio recording of "Let's Get It On," as well as the sheet music.  Compl. ¶ 55.  Indeed, this suit

15

alleges infringement of the collective copyrights embodied in the 1973 and 2020 registrations.  *See* Opp. to Sheeran Mot. at 19-20.  Because the 1973 and 2020 copyrights encompass different versions of "Let's Get It On," a finder of fact could conclude that "Thinking Out Loud" is substantially similar to one but not the other version of the song.  Judge Stanton appeared to reach a similar conclusion when he stated that the two actions should be prosecuted separately so as to avoid "jury confusion."  *See SAS I,* Dkt. 164.

Because the actions are not duplicative as a matter of law, dismissal would be inappropriate here.  *See Curtis,* 226 F.3d at 133 ("A court must be careful, when dismissing a second suit between the same parties as duplicative, not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same.").  The considerable similarity between the two claims nonetheless counsels in favor of staying this action pending the resolution of *SAS I*.  At this stage, the Court cannot accurately predict what preclusive effects *SAS I* will have on this action.  It can safely conclude, however, that the potential for overlap is substantial.  For example, on the one hand, a verdict in favor of Plaintiff in *SAS I* could effectively moot this action.  On the other hand, a ruling that "Thinking Out Loud" does not infringe upon the 1973 copyright in "Let's Get It On" could narrow the scope of the instant infringement claim to the musical elements that are embodied only in the 2020 copyright.

In order to "foster judicial economy" and to protect the parties from "the vexation of concurrent litigation over the same subject matter," *Curtis,* 226 F.3d at 138 (internal quotation marks omitted), this action is hereby stayed pending the resolution of *SAS I.*

## II.     Claims II and III:  Breaches of "Administration" and "Songwriting" Agreements

The Sony Defendants also argue that Plaintiff's claims for breach of contract should be dismissed as "patently deficient" because they rely on unsupported claims about agreements that Plaintiff admits that it has never seen, and to which it is not a party.  Sony Mot. at 3.  Relying on what they characterize as the "actual contracts in question" which they attach to their motion papers, the Sony Defendants contend that Plaintiff does not qualify as a third-party beneficiary of either.  Plaintiff questions the "authenticity, accuracy and completeness" of the provided contracts and insists that the "Court is required to disregard them for this exercise."  Opp. to Sony Mot. at 2.  Because Plaintiff has alleged no specific facts that would allow the Court to reasonably infer that it is a third-party beneficiary to an agreement that Defendants have breached in the manner alleged, the Court concludes, without relying on any materials outside the record, that Plaintiff has failed to state a plausible claim for breach of contract.

Because the Complaint does not identify any particular agreement that has been breached, and Plaintiff disputes the accuracy of the agreements provided by Defendants that are governed by California and English law, respectively, the Court cannot be certain which substantive law applies to its contract claims.  Plaintiff's allegations of third-party beneficiary status are, in any event, insufficient under any standard.  A party qualifies as the intended beneficiary of a hypothetical contract where "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  Restatement (Second) of Contracts § 302(b).  By contrast, an incidental beneficiary, defined as someone who does not meet the criteria of an intended beneficiary, "acquires by virtue of the promise no right against the promisor or the promisee."  *Id.* § 315.  In other words, in order to state a claim for breach of a contract to which one is not a party, a plaintiff must plausibly allege that the agreement was intended to benefit the plaintiff.  This

common law proposition is supported by the laws of California and New York.  Under California law, "a party not named in the contract may qualify as a beneficiary under it where the contracting parties must have intended to benefit the unnamed party and the agreement reflects that intent." *Sessions Payroll Mgmt., Inc. v. Noble Const. Co.*, 84 Cal. App. 4th 671, 680 (Cal. Ct. App. 2000). New York similarly requires that a putative third-party beneficiary prove an intent to benefit.  *See, e.g., Dormitory Auth. v. Samson Constr. Co*., 30 N.Y.3d 704, 710 (2018) ("[A] third party may sue as a beneficiary on a contract made for [its] benefit. However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts." (internal quotation marks omitted)).  As explained below, Plaintiff fails to plead sufficient factual content to state a plausible claim for breach of contract under this standard.

> ### A.     Whether Plaintiff States a Claim for Breach of the "Administration Agreements"

With respect to its Second Cause of Action, Plaintiff alleges upon information and belief that "Sony/ATV's . . . worldwide administration of 'Let's Get It On' is governed by one or more Administration Agreements between Sony/ATV, on the one hand, and Stone Diamond, on the other hand."  Compl. ¶ 383.  In response to this allegation, the Sony Defendants cite to a redacted version of "an omnibus agreement entered into on June 29, 2012," which they contend is the Administration Agreement to which Plaintiff refers.  Sony Mot. at 5; *see* Dkt. 67, Decl. of David J. Przygoda, Ex. 1 ("2012 Agreement").   The 2012 Agreement—entitled "Administration Agreement"—expressly disclaims the existence of any third-party beneficiaries, *id.* § 7.6, and provides that it and "all matters (including any contractual or noncontractual obligation), claims and defenses arising from or connected with it or the formation, breach, termination or validity of this Agreement, shall be governed and construed by the laws of England," *id.* § 7.11.  Plaintiff

concedes that, if "the Court were to consider the contracts, [it] expect[s] that the Court would conclude that SAS cannot maintain a claim based solely on the Administration Agreement, as it has an unredacted provision prohibiting third-party beneficiaries, and neither Townsend nor SAS were parties to the Administration Agreement."  Opp. to Sony Mot. at 19.

Although Plaintiff purports to question the "authenticity, accuracy, and relevance" of this agreement, it expressly challenges only the "selective redaction" of the document, on the basis that it obscures "the full breadth of [Defendants'] role as administrator of ['Let's Get It On']".  Opp. to Sony Mot. at 18-19.  Plaintiff, however, raises no challenge to the unredacted provision that appears to forestall its claim, the disclaimer of third-party beneficiaries.  Because there is no dispute regarding the "authenticity," "accuracy," or "relevance" of that provision, or the larger document in which it is contained, the Court may consider it.  *See Faulkner*, 463 F.3d at 134.  The Court agrees with Defendants—and Plaintiff—that acceptance of the 2012 Agreement would mandate dismissal of its second cause of action.

Yet the Court need not rely on such materials outside the record as the "basis for dismissal," *see id.*, because Plaintiff's allegations are facially insufficient.  To support its claim that it has standing to bring a claim for breach of the unspecified "Administration Agreements," Plaintiff alleges in conclusory fashion that it "is a third-party beneficiary of the Administration Agreements."  Compl. ¶ 386.  Plaintiff provides no "further factual enhancement" for this legal conclusion.  *Iqbal*, 556 U.S. at 678.  The Court therefore need not credit it.  *See Stadnick*, 861 F.3d at 35.  In lieu of alleging any facts that would suggest that the "Administration Agreement" intended to benefit a beneficial owner of a copyright, Plaintiff cites numerous cases, most of which involve New York law, in which courts have found that conduct resembling that attributed to Defendants constituted a breach.  *See* Compl. ¶¶ 387-393.  Such allegations of breach cannot cure

Plaintiff's failure to plead the necessary predicate, the existence of any agreement to which it is a beneficiary.  In sum, Plaintiff's claims regarding the "Administration Agreements," which assert a breach without identifying any particular agreement or alleging any facts to suggest that it qualifies as an intended beneficiary to such a contract, are insufficient to withstand a motion to dismiss.

    **B.**    **Whether Plaintiff States a Claim for Breach of the "Songwriting Agreements"**

Plaintiff's claims regarding the "Songwriting Agreements," many of which reiterate the allegations made in its second cause of action, are similarly deficient.  Plaintiff contends that the Sony Defendants breached "Songwriting Agreements" between Townsend and Gay and Stone Diamond, which upon information and belief, govern Stone Diamond's legal ownership of "Let's Get It On."  Compl. ¶ 409.  Again, Plaintiff does not identify any specific agreement, and admits that it has not received "a single piece of paper" that specifies Stone Diamond's obligations.  *Id.* ¶ 410.

Defendants contend that Townsend had no songwriter agreement with Stone Diamond, and that the latter's rights derive from a June 9, 1973 publishing agreement with Cherritown, which it has attached to its motion papers.  Sony Mot. at 6; *see* Dkt. 66, Declaration of Audrey Ashby, Ex. 1 ("1973 Agreement").  The 1973 agreement, signed by Townsend, transfers 50% of Cherritown's right, title and interest in "Let's Get It On" to Stone Diamond as publisher.  *Id.*   It also specifies that it shall be construed by the laws of the state of California.  *Id.* § 15.

Plaintiff purports to challenge the "authenticity, accuracy, and relevance" of the 1973 Agreement on two grounds.  First, Plaintiff maintains that the Sony Defendants have failed to provide any of the songwriting agreements that Plaintiff believes exist, disputing Defendants' assertion that no songwriter agreements between Cherritown and Townsend exist in Stone

Diamond's files.  Second, Plaintiff insists that the 1973 Agreement paints an incomplete picture of the contractual arrangement between Stone Diamond and Townsend because it effects only a 50% transfer of the latter's ownership interest.  In response, Defendants appended to their reply memorandum the 1988 Agreement, which memorializes the sale of Cherritown's remaining interest in "Let's Get It On."

According to Plaintiff, the "Sony Defendants' selective disclosure of agreements, based on their selective view of the facts, should not be allowed to shape the disposition of their motion to dismiss."  Opp. to Sony Mot. at 17.  That may be true.  Where, as here, there are material disputes of fact regarding the relevance of a document, the Court should not rely on that document as a basis for dismissal.  *See Faulkner*, 463 F.3d at 134.  Defendants' alleged refusal to provide the contracts, however, does not absolve Plaintiff of its burden to state a plausible claim for relief of breach of contract.  Plaintiff has not satisfied its burden here, because it has not plausibly alleged the existence of any other contract beyond the ones disclosed by Defendants, let alone that it is the third-party beneficiary of such a contract.

Without further factual enhancement, speculative allegations about the provisions of hypothetical agreements with which Plaintiff is neither familiar, and to which Plaintiff is not a party, are insufficient to withstand a motion to dismiss.  Beyond the conclusory allegation that "SAS is a third-party beneficiary of the Songwriter Agreements," Compl. ¶ 412,  Plaintiff alleges no facts that reasonably permit an inference that it enjoys third-party-beneficiary rights in any contract that was breached.  Crucially, Plaintiff fails to allege that it was the intended beneficiary of any agreement between Townsend and one of the Sony Defendants.  As a result, and regardless of which substantive law applies, Plaintiff has failed to plead enough facts to plausibly state a claim for breach of the "Songwriting Agreements."

### C.      Whether Plaintiff Should Be Granted Leave to Amend

Plaintiff has not requested leave to amend the Complaint in the event the Court dismisses the action for failure to state a claim.  Nevertheless, pursuant to Fed. R. Civ. P. 5(a)(2), a court should freely grant leave to amend "when justice so requires."  Although the agreements provided by Defendants, neither of which demonstrates an intent to benefit Plaintiff, suggest that any such amendment may be futile, the Court is mindful that *Faulkner* and its progeny counsel against relying on disputed materials outside the record as the bases for dismissal.  Accordingly, Plaintiff's claims for breach of contract are dismissed without prejudice to amending the complaint to bolster allegations that it is a third-party beneficiary to a relevant agreement.

### CONCLUSION

For the foregoing reasons, the Sony Defendants' motion to dismiss Counts II and III of the Complaint is granted without prejudice to file an amended complaint if Plaintiff has a good faith basis for doing so.  Defendants' motion to dismiss Count I of the Complaint is denied.  This action is hereby stayed pending resolution of *Structured Asset Sales, LLC v. Sheeran et al.,* No. 18-cv-5839.   Within a week of the resolution of that case, the parties shall submit a letter to the Court that proposes next steps and provides their respective positions on how that action affects this one.

The Clerk of Court is respectfully directed to terminate items 62 and 65 on the docket. SO ORDERED.


Dated:          March 30, 2021
                New York, New York


                                                _____
                                                Ronnie Abrams
                                                United States District Judge

22